# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RONNIE SMITH**, <br><br> Plaintiff, <br><br> v. <br><br> **CITY OF THE DALLES**, a Municipal corporation; and **KOJI NAGAMATSU,** in his individual and official capacity as City of The Dalles Police Officer, <br><br> Defendants. | Case No. 6:16-cv-01771-SI <br><br> **ORDER** |

Ronnie Smith, *pro se* Plaintiff.

Gerald L. Warren, GERALD WARREN LAW, 901 Capitol St. NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

      Plaintiff filed this action *pro se* against the City of The Dalles ("the City") and Koji Nagamatsu, a police officer for the city. Plaintiff alleges that Officer Nagamatsu falsely arrested and imprisoned him, thereby violating his Fourth and Fourteenth Amendment rights in contravention of 42 U.S.C. § 1983. Plaintiff also brings state law claims for false arrest and imprisonment, intentional infliction of emotional distress, and negligence. Additionally, he brings a claim for "lost wages," which the Court interprets as a request for damages rather than an independent claim. Defendants move for summary judgment on the basis that there was probable cause for Plaintiff's arrest, that Plaintiff failed to comply with the notice requirement of the Oregon Tort Claims Act, that Plaintiff's intentional infliction of emotional distress claims are

PAGE 1 – ORDER

not directed at Defendants, and that Defendants had no duty to investigate beyond finding probable cause. For the reasons stated below, the Court grants in part Defendants' motion for summary judgment and denies it in part.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "Unless it is absolutely clear that no amendment can cure the defect, . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Federal Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**BACKGROUND**

On May 28, 2015, an employee at Grinders Coffee in The Dalles called 911 to report that a man had stolen a tip jar with cash from the coffee shop. The employee described the suspect as wearing a white shirt with the letters "LA," and said that he was carrying a black backpack as he walked westbound on Third Street toward the Wells Fargo Bank. Emergency services (911) dispatched Officer Nagamatsu to investigate. The officer spotted Mr. Smith walking in front of the Wells Fargo Bank wearing a white shirt with the letters "LA" and carrying a black duffle bag.

Officer Nagamatsu got out of his patrol car and asked Mr. Smith to drop the bag and put his hands behind his back. Mr. Smith complied. Officer Nagamatsu explained that he was detaining Mr. Smith because he fit the description of the suspect in the coffee shop theft. Officer Nagamatsu put Mr. Smith in handcuffs and performed a protective pat-down of Mr. Smith to ensure he was not carrying a weapon. During the pat-down, Officer Nagamatsu discovered a "wad" of dollar bills. As Officer Nagamatsu detained Mr. Smith, Officer Michael Waine interviewed witnesses at the coffee shop, which was about a block from the Wells Fargo Bank. After Officer Nagamatsu conducted the pat-down and discovered the money, Officer Waine radioed Officer Nagamatsu from the coffee shop and said the witnesses positively identified Mr. Smith as the suspect from that distance. Officer Nagamatsu then read Mr. Smith his *Miranda*

PAGE 3 – ORDER

rights and arrested him for Theft III, a misdemeanor offense. Officer Nagamatsu then took Mr. Smith to the Northern Oregon Regional Correctional Facility for booking.

## DISCUSSION

### A. Constitutionality of the Arrest

There is no reasonable dispute that probable cause existed when Defendants assert the arrest took place. At that point, police had stopped Mr. Smith just blocks from the scene shortly after the theft occurred, he matched the description of the suspect, and an eyewitness had positively identified him, although from a block away. Mr. Smith, however, contends that the arrest occurred when Officer Nagamatsu put Mr. Smith in handcuffs. At that point, there had not yet been an eyewitness identification, and Defendants do not appear to contend that probable cause had been established at that point.

"Under ordinary circumstances, drawing weapons and using handcuffs are not part of a *Terry* stop." *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001). "Nevertheless, we allow intrusive and aggressive police conduct without deeming it an arrest… when it is a reasonable response to legitimate safety concerns on the part of the investigating officers." *Id.* Such intrusive means to effect a stop have been justified when police have information that the suspect is currently armed or the stop closely follows a violent crime. *See Washington v. Lambert*, 98 F.3d 1181, 1187 (9th Cir. 1996); *Miles*, 247 F.3d at 1012. Officer Nagamatsu's declarations provide no explanation for why he placed Mr. Smith in handcuffs. There is a genuine dispute as to whether there existed such legitimate safety concerns to justify Officer Nagamatsu's use of handcuffs before probable cause was established.

### B. Constitutionality of the Frisk and Search

The Court reads Mr. Smith's complaint also to allege that Officer Nagamatsu violated Mr. Smith's Fourth Amendment rights by performing a pat-down prior to the (undisputed) arrest

and reaching into his pocket in the course of that pat-down. The complaint alleges: "[t]he stop was illegal when the defendant Koji Nagamatsu seized and searched…which violated plaintiff's rights under the fourth and fourteenth amendment of the US constitution. The Defendant knew what he did was illegal by putting his hand in plaintiff's pocket without consent prior to arrest…" ECF 47 at ¶ 5.

There is a genuine issue of material fact as to whether Officer Nagamatsu violated the Fourth Amendment when he performed a protective pat-down on Mr. Smith and when he reached into Mr. Smith's pocket to pull out several crumpled dollar bills. An officer may conduct a "*Terry* stop" when he has a reasonable, articulable suspicion that a person has committed a crime. *Terry v. Ohio*, 392 U.S. 1. Insofar as Mr. Smith alleges that Officer Nagamatsu violated the Fourth Amendment in conducting the stop, his claim fails. There is no genuine dispute that Officer Nagamatsu reasonably suspected Mr. Smith of having stolen the tip jar, as police spotted him within a block of the coffee shop matching the 911 description.

But "[a] lawful frisk does not always flow from a justified stop".[1] *Thomas v. Dillard*, 818 F.3d 864, 876 (9th Cir. 2016) (quoting *United States v. Thomas*, 863 F.2d 622, 628 (9th Cir. 1988). Rather, there is a "narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, *where he has reason to believe that he is dealing with an armed and dangerous individual.*" *Terry*, 392 U.S. at 27 (emphasis added). To justify a frisk, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Dillard*, 818 F.3d at

---

[1] This contrasts with a search incident to arrest, which a lawful arrest automatically authorizes for purposes beyond the officer's protection, including the discovery and preservation of evidence. *United States v. Robinson*, 414 U.S. 218, 234 (1973). Defendants do not assert that Mr. Smith was under arrest at the time of the pat-down or that they had probable cause to arrest him until the eyewitness identified Mr. Smith as the person who had stolen the tip jar.

876 (quoting *Terry*). A "mere inchoate and unparticularized suspicion or hunch that a person is armed and dangerous does not establish reasonable suspicion." *Id.* (citing *Maryland v. Buie*, 494 U.S. 325, 332 (1990)). Reasonable suspicion is an objective standard and the suspicion must be individualized. *Dillard*, 818 F.3d at 876-77. Officer Nagamatsu's incident report notes that Mr. Smith was "very standoffish," but neither the report nor Officer Nagamatsu's declaration asserts a belief by the officer that Mr. Smith was armed and dangerous. Without such a reasonable belief, the protective pat-down would not have been justified under *Terry*. Mr. Smith was suspected of stealing a small amount of money from a coffeeshop tip jar, a Class C misdemeanor in Oregon punishable by a maximum of 30 days imprisonment. O.R.S. § 164.043, §161.615. There is no undisputed evidence that Mr. Smith had committed a violent offence or was behaving in a violent or threatening manner. Whether the circumstances of the stop created an objectively reasonable suspicion that Mr. Smith was armed and dangerous is a fact question for the jury.

Even if Officer Nagamatsu was justified in conducting the protective pat-down, there is an additional dispute about whether reaching into Mr. Smith's pocket violated the Fourth Amendment. A protective pat-down is justified only to protect the safety of the officer and others nearby, not to uncover and preserve evidence, and "must therefore be confined in scope to an intrusion reasonably designed to discovery guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29. To frisk a suspect, an officer "conduct[s] a carefully limited search of the outer clothing of [the suspect] … to discover weapons which might be used to assault him." *Id.* at 30; *see also Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993). An officer may reach into a suspect's pocket during a protective pat-down if he feels an object and it is "immediately apparent" that the object is a weapon or contraband. *Dickerson*, 508

U.S. at 375. If an officer feels an object that is not clearly a weapon but could be one, he is permitted to manipulate the object to ascertain that it poses no threat, but may go no further. *See United States v. Mattarolo*, 209 F.3d 1153, 1158 (9th Cir. 2000).

Officer Nagamatsu states in his declaration that he "could not determine from my pat down if the contents of his pocket included a weapon, so I reached into the pocket and removed what turned out to be a wad of crumpled bills." ECF 62. The incident report sheds no additional light on what prompted Officer Nagamatsu to reach into Mr. Smith's pocket. A wad of bills stolen from a tip jar and hurriedly stuffed into a pocket would presumably be compressible and would change shape when Officer Nagamatsu applied the force of a pat-down to it. Officer Nagamatsu's declaration does not explain why he thought the wad of cash was possibly a weapon, or what kind of weapon he believed it could be. A reasonable jury could conclude that it was unreasonable for Officer Nagamatsu to believe that a "wad of crumpled bills" could be a weapon. A jury also could determine that Officer Nagamatsu could have employed a less invasive strategy to eliminate the risk that Mr. Smith's pocket held a weapon. For example, he might have continued to manipulate the pocket until it became clear that the bills could not possibly be a weapon.

### 1. Qualified Immunity

Officer Nagamatsu is not entitled to qualified immunity. All of the cases discussed above – *Miles*, *Terry*, *Dickerson*, and *Mattarolo*, chiefly – clearly establish the law that police officers must follow during a *Terry* stop and protective frisk.

### C. *Monell* Claim

Mr. Smith has put forward no admissible evidence to support his contention that the City of The Dalles trains its officers to handcuff and search suspects' pockets without search warrants. There is thus no genuine issue of material fact for a jury to decide on this claim.

PAGE 7 – ORDER

**D. Intentional Infliction of Emotional Distress and Negligence**

As a preliminary matter, Defendants argue that each of Mr. Smith's state tort claims fail because he did not comply with the notice requirement of the Oregon Tort Claims Act (OTCA), which states that "a plaintiff cannot maintain a tort action against a public body, its officers, its employees, or its agents unless sufficient 'notice of claim' is given 'within 180 days after the alleged loss or injury.'" Or. Rev. Stat. § 30.275(2)(b). Mr. Smith filed his first tort claim notice on March 24, 2018, nearly three years after the arrest and search took place. Mr. Smith's state tort claims of intentional infliction of emotional distress and negligence are untimely and fail.

## CONCLUSION

Defendants' motion for summary judgment (ECF 52) is GRANTED in part as to the state tort claims of intentional infliction of emotional distress and negligence and DENIED as to all other claims. Defendants' motion to strike Plaintiff's sur-reply (ECF 66) is DENIED as moot.

**IT IS SO ORDERED**.

DATED this 17th day of January, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge