# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RONNIE SMITH**, | Case No. 6:16-cv-1771-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CITY OF DALLES**, a Municipal corporation, and **KOJI NAGAMATSU**, in his individual and official capacity as City of the Dalles Police Officer, | |
| Defendants. | |

James E. Geringer, KLARQUIST SPARKMAN, LLP, 121 SW Salmon Street, Ste. 1600, Portland, OR 97204. Of Attorneys for Plaintiff.

Gerald L. Warren, THE LAW OFFICE OF GERALD L. WARREN AND ASSOCIATES, 901 Capitol Street NE, Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Ronnie Smith filed this action *pro se* against the City of The Dalles (the City) and Koji Nagamatsu, a police officer for the City. Plaintiff alleged that Officer Nagamatsu falsely arrested and imprisoned Plaintiff, thereby violating Plaintiff's Fourth and Fourteenth Amendment rights in contravention of 42 U.S.C. § 1983. Plaintiff also alleged claims for false arrest and imprisonment, negligence, and intentional infliction of emotional distress under state law. The City and Officer Nagamatsu filed a motion for summary judgment. Defendants argued

PAGE 1 – OPINION AND ORDER

that Plaintiff's state law claims were barred under Oregon's Tort Claims Act (OTCA) and also failed on the merits. Defendants further argued that the Court should grant summary judgment on Plaintiff's federal claims because Officer Nagamatsu had probable cause to arrest Plaintiff after the officer had conducted an investigatory stop of Plaintiff, placed handcuffs on Plaintiff, searched Plaintiff and found cash suspected to be from a recent theft, and Officer Nagamatsu's partner had obtained an eyewitness identification of Plaintiff.

The Court granted summary judgment on Plaintiff's state law claims for negligence and intentional infliction of emotional distress as time-barred under the OTCA. *Smith v. City of Dalles*, 2020 WL 265204, at *4 (D. Or. Jan. 17, 2020). For Plaintiff's federal claims, the Court found that probable cause existed for the arrest after the eyewitness identification, when Defendants originally argued the arrest occurred. *Id.* at *2. The Court also concluded, however, that disputed issues of material fact remained about whether it was lawful under the Fourth Amendment for Officer Nagamatsu to place Plaintiff in "handcuffs before probable cause was established," to conduct a frisk of Plaintiff without a reasonable suspicion that he was armed and dangerous, and to reach into his pocket and remove money as part of that search. *Id.* at *2-3. The Court, therefore, denied Defendants' motion for summary judgment on Plaintiffs' federal claims against Officer Nagamatsu. The Court granted summary judgment on Plaintiff's *Monell* claim against the City. *Id.* at *4. The Court later appointed counsel to represent Plaintiff at trial on his remaining claims.

Now before the Court is a second motion for summary judgment filed by Defendants. In this motion, Defendants argue that along with having probable cause at the time of the original arrest, as argued in the first motion for summary judgment, Officer Nagamatsu had probable cause to arrest Plaintiff at the time Officer Nagamatsu first placed Plaintiff in handcuffs. Thus,

argue Defendants, Plaintiff was not subject to an unconstitutional seizure when Officer Nagamatsu placed Plaintiff in handcuffs, and Officer Nagamatsu's search was incidental to arrest and therefore lawful. Defendants argue that there is no issue of fact for the jury and this case should not proceed to trial.

Plaintiff responds that Defendants should be estopped, at this late stage in the litigation, from changing their argument about when Plaintiff's arrest occurred, but if the Court permits Defendants to change their position, then Plaintiff should be allowed to add a Fifth Amendment claim because Plaintiff was questioned while under arrest and before he was given his *Miranda* warning. Plaintiff argues that if, as Defendants now assert in their new argument, Plaintiff was arrested when he was placed in handcuffs, then Officer Nagamatsu needed to give Plaintiff his *Miranda* warning at that time and his failure to do so gives rise to a § 1983 claim.[1] Thus, Plaintiff moves for leave to amend his complaint to add a claim under the Fifth Amendment. Plaintiff also argues that Defendants' motion for summary judgment fails on the merits because Officer Nagamatsu did not have probable cause to arrest Plaintiff when he placed Plaintiff in handcuffs. For the reasons stated below, Defendants' motion for summary judgment is denied, and Plaintiff's motion to amend is granted.

## STANDARDS

### A.  Motion for Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine

---

[1] Plaintiff cites *Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009), but his proposed claim would more readily fall under *Tekoh v. County of Los Angeles*, 985 F.3d 713 (9th Cir. 2021).

dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## B.  Motion to Amend

Rule 15(a)(2) of the Federal Rule of Civil Procedure provides that the "court should freely give leave [to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy of favoring amendments with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (simplified). The purpose of the rule "is 'to facilitate decision on the merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011)). A district court, however, may, within its discretion, deny a motion to amend "due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (alteration in original) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)). "Not all of the factors merit equal weight. As this circuit and others have held, it is the consideration of prejudice to the opposing

party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). Generally, however, "[a]bsent prejudice, or a strong showing of any of the remaining [four] factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052 (alterations added, emphasis in original). When weighing the factors, all inferences should be made in favor of granting the motion to amend. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

Leave to amend may be denied if the proposed amendment is futile or would be subject to immediate dismissal. *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile "only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada Cnty*, 119 F.3d 1385, 1393 (9th Cir. 1997)). If the facts or circumstances possibly could "be a proper subject of relief, [a plaintiff] ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The standard for assessing whether a proposed amendment is futile therefore is the same as the standard imposed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see, e.g.*, *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), although "viewed through the lens of the requirement that courts freely give leave to amend when justice so requires." *Barber v. Select Rehab., LLC*, 2019 WL 2028519, at *1 (D. Or. May 8, 2019) (quotation marks omitted).

## BACKGROUND

On May 28, 2015, the manager at Grinders Coffee in The Dalles called 911 to report that a man had attempted to steal a tip jar with cash from the coffee shop. The manager described the

PAGE 5 – OPINION AND ORDER

suspect as wearing a white shirt with the letters "LA" and brown shorts, and said that he was carrying a black backpack as he walked westbound on Third Street toward the Wells Fargo Bank. The manager stated that she "believed" the man had money from the tip jar in his pocket but stated, "I don't know if he currently has any [money] on him." ECF 86-1 at 2. Emergency services (911) dispatched Officer Nagamatsu to investigate. The officer spotted Plaintiff walking in front of the Wells Fargo Bank wearing a white shirt with the letters "LA" and carrying a black duffle bag.

Officer Nagamatsu got out of his patrol car and asked Plaintiff to drop the bag and put his hands behind his back. Plaintiff complied. Officer Nagamatsu put Plaintiff in handcuffs. As he was doing so, he explained that he was detaining Plaintiff because he fit the description of the suspect in the coffee shop tip jar theft. Officer Nagamatsu then performed a protective pat-down of Plaintiff to ensure he was not carrying a weapon. During the pat-down, Officer Nagamatsu discovered one $10 bill and six $1 bills "crumpled up" in Plaintiff's pocket. While he was in handcuffs, Plaintiff stated that he did not know what was going on and denied taking money from the tip jar or having knowledge of the theft.

As Officer Nagamatsu detained Plaintiff, Officer Michael Waine interviewed witnesses at the coffee shop, which was about a block from the Wells Fargo Bank. After Officer Nagamatsu conducted the pat-down and discovered the money, Officer Waine radioed Officer Nagamatsu. Officer Nagamatsu informed Officer Waine that he found one $10 bill and several $1 bills on Plaintiff. Officer Waine reported that witnesses remembered a $10 bill being in the tip jar before Plaintiff attempted to take the jar but not after. Officer Waine also confirmed from the coffee shop that a witness positively identified Plaintiff as the suspect from that distance. Officer Nagamatsu then read Plaintiff his *Miranda* rights and placed him in the back of Officer

PAGE 6 – OPINION AND ORDER

Nagamatsu's patrol vehicle. Officer Nagamatsu reported that Plaintiff made additional statements when he was in the back of the officer's car. Officer Nagamatsu transported Plaintiff to the Northern Oregon Regional Correctional Facility for booking. Plaintiff was arrested, booked, and arraigned on Theft III, a misdemeanor offense. Two years later, in 2017, he was prosecuted, and found guilty. Plaintiff appealed, which entitled him to a trial *de novo*, and the City dismissed the charge.

During Plaintiff's trial, Officer Nagamatsu testified about the statements made by Plaintiff both before and after Officer Nagamatsu provided Plaintiff with the *Miranda* warning. There is a dispute about when Officer Nagamatsu began recording Plaintiff's statement. Officer Nagamatsu asserts in his police report that he turned on his recording device after giving Plaintiff his *Miranda* rights. In his Amended Complaint, Plaintiff alleges that Officer Nagamatsu turned on the recording device before reading Plaintiff his *Miranda* rights. At Plaintiff's trial, Officer Nagamatsu testified that he uses a digital recorder that he carries with him to record testimony. Defendants submit a transcript of the audio recording from Officer Nagamatsu and describe it as from the officer's "body cam." In the transcript of the audio recording of the interrogation of Plaintiff, there is no mention that Officer Nagamatsu had informed Plaintiff of his *Miranda* rights.

## DISCUSSION

### A.  Motion for Summary Judgment

Defendants move for summary judgment on Plaintiff's federal claims because, regardless of Officer Nagamatsu's subjective intent, Defendants argue that Officer Nagamatsu placed Plaintiff under arrest when he put Plaintiff in handcuffs. Defendants assert that Officer Nagamatsu objectively had probable cause to arrest Plaintiff at that time, and the Fourth Amendment requires only objective, and not subjective, probable cause. Plaintiffs argue that

Defendants are estopped from raising this argument and, in any event, the argument fails on the merits because Officer Nagamatsu did not have probable cause.

### 1. Judicial Estoppel

In Defendants' first motion for summary judgment, they argued that Officer Nagamatsu had probable cause to arrest Plaintiff based on eyewitness testimony, which occurred after Officer Nagamatsu placed Plaintiff in handcuffs and conducted the patdown search. Plaintiff responded that he was unlawfully arrested as soon as he was placed in handcuffs and that he was unlawfully searched. Defendants replied to that argument by reiterating that Officer Nagamatsu had probable cause at the time of the arrest, which occurred *after* the eyewitness identification, and arguing:

> The detention in handcuffs occurred prior to [Plaintiff's] lawful arrest because he had been identified as a suspect in a crime and refused to identify himself to Officer Nagamatsu. Detaining a criminal suspect in handcuffs before probable cause to arrest is established is not unlawful.

ECF 61 at 2; *see also id.* at 3 ("The brief period of time plaintiff was detained enabled officers to quickly interview the witnesses before making the arrest. After probable cause was clearly established, Officer Nagamatsu read plaintiff his *Miranda* Rights and arrested him."). Defendants argued that Officer Nagamatsu's detention and search of Plaintiff was lawfully conducted under *Terry v. Ohio*, 392 U.S. 1 (1968).

The Court agreed with Defendants that probable cause existed for Plaintiff's arrest after the eyewitness identification. That issue did not appear to be disputed by Plaintiff (representing himself at that time). The Court, however, rejected Defendants' argument and found a genuine issue in dispute whether the stop and frisk was lawful under *Terry*.

Plaintiff argues that Defendants should be estopped from asserting that probable cause existed at the earlier time, when Officer Nagamatsu placed Plaintiff in handcuffs, because

Defendants previously asserted that the detention in handcuffs was not an arrest, but only a *Terry* stop. A district court has discretion whether to impose judicial estoppel. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). In considering whether to apply judicial estoppel, a district court may consider several questions, including:

> (1) Is the party's later position "clearly inconsistent with its earlier position?" (2) Did the party succeed in persuading a court to accept its earlier position, creating a perception that the first or second court was misled? and (3) Will the party seeking to assert an inconsistent position "derive an unfair advantage or impose an unfair detriment on the opposing party?"

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012) (quoting *New Hampshire*, 532 U.S. at 750-51).

Regarding the first *New Hampshire* factor, Defendants' current position is somewhat inconsistent with Defendants' previous position, but not "clearly" inconsistent. That Defendants previously argued that Plaintiff was lawfully arrested at a later time is not necessarily inconsistent with Defendants now arguing that Officer Nagamatsu had probable cause to arrest Plaintiff at an earlier time. Defendants' previous assertions, however, also appeared to suggest that probable cause was not established at that earlier time. Defendants did not clearly articulate that position, however, and the Court's Order reflects the Court's uncertainty about Defendants' position in this regard. *See, e.g.*, *Smith*, 2020 WL 265204, at *2 ("Defendants do not appear to contend that probable cause had been established at that point [the time Plaintiff was placed in handcuffs].").

Regarding the second factor, although the Court found that probable cause existed at the later time, Plaintiff did not appear to dispute that fact. The dispute was about the earlier point in time, which is the time now at issue. Plaintiff argued that there was no probable cause to arrest him when he was first handcuffed. Defendants argued that no probable cause was needed at that

time because it was a lawful *Terry* stop. The Court found that the initial *Terry* stop was lawful, but the Court did not accept Defendants' position that placing handcuffs on Plaintiff was necessarily lawful under *Terry* and found an issue of fact on that portion of the *Terry* stop. *Id.* at *2.

Regarding the third factor, Defendants will not derive an unfair advantage, particularly given Plaintiff's motion to amend his complaint to add his Fifth Amendment claim. If Defendants now want to change their version of the factual chronology, then Plaintiff may raise a new claim in response to Defendants' new factual assertion. This issue is discussed below in addressing Plaintiff's motion to amend. The Court declines to apply judicial estoppel to Defendants' argument that probable cause applied earlier than previously asserted.

2.   **Merits Analysis**

a.   **Legal Standards for Determining Probable Cause Under Federal Law**

The Ninth Circuit has explained :

> Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested. While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, mere suspicion, common rumor, or even strong reason to suspect are not enough. Under the collective knowledge doctrine, in determining whether probable cause exists for arrest, courts look to the collective knowledge of all the officers involved in the criminal investigation.

*Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008) (quotation marks and citations omitted). Probable cause does not require certainty, nor is it a "beyond a reasonable doubt" standard. *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015). "The determination of probable cause is based upon the totality of the circumstances known to the officers at the time of the arrest." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th

Cir. 2015) (simplified). Officers, however, "may not ignore exculpatory evidence that would 'negate a finding of probable cause.'" *Yousefian*, 779 F.3d at 1014 (quoting *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)).

When the facts are undisputed, probable cause is a question of law for the court. *See Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (holding that what is "objectively reasonable" for an officer to do under the Fourth Amendment is "a pure question of law"); *Peng v. Mei Chin Penghu*, 335 F.3d 970, 979-80 (9th Cir. 2003) ("[W]here the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts, it is appropriate for this court to decide whether probable cause existed . . . ."). "Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury." *Harper*, 533 F.3d at 1022.

### b.  Application to Plaintiff's Arrest

Defendants assert that probable cause existed to arrest Plaintiff when Officer Nagamatsu placed Plaintiff in handcuffs. Defendants argue that a witness called 911, identified herself, and described the suspect to the robbery, including what he was wearing, what he was carrying, and in which direction he was walking. When Officer Nagamatsu arrived on the scene, he saw Plaintiff, who matched the description given by the 911 caller. Defendants argue that the nexus between the 911 caller's descriptions and the officer's observations of Plaintiff are objectively reasonable evidence supporting probable cause.

Although there are some disputed facts involving Officer Nagamatsu's questioning of Plaintiff and the order of events, they do not relate to the issue of probable cause raised by Defendants or the facts known by Officer Nagamatsu when he placed Plaintiff in handcuffs. There is a transcript of the 911 call. Thus, the Court decides probable cause as a matter of law.

The Supreme Court and the Ninth Circuit have held that a contemporaneous, reasonably specific, reasonably identifiable 911 description is sufficiently reliable to support a "reasonable suspicion" required for a *Terry* stop. *See, e.g.*, *Navarette v. California*, 572 U.S. 393 (2014); *United States v. Terry-Crespo*, 356 F.3d 1170 (9th Cir. 2004). Defendants have not cited, however, and the Court could not find, a case in which only a 911 physical description was sufficient evidence on which to base probable cause to *arrest* someone. Indeed, in a similar case involving a physical description sent over the police radio, the D.C. Circuit explained the difference between a *Terry* stop and an arrest when officers are provided a physical description. *United States v. Short*, 570 F.2d 1051 (D.C. Cir. 1978). The description of the perpetrator in that case—which was more detailed than the description of Plaintiff that the manager provided to 911—was a black male, 18-19 years old, 5'9 to 5'10 tall, 145 to 155 pounds, "with a short Afro-bush haircut and dark complexion. He was described as wearing a camel-colored, waist-length leather jacket and blue trousers." *Id.* at 1053. Nonetheless, the D.C. Circuit held that finding a suspect 1.5 blocks from the scene of a crime who matched the description, and who walked away from police, did not constitute probable cause for arrest for burglary. *Id.* at 1053-54. The court, however, explained:

> The fact that there was no reasonable basis for an arrest does not mean that the police officer could not take action on the basis of the police radio run. When he saw the appellant [the officer] had a reasonable, articulable suspicion that the appellant might be connected with the crime, and this was sufficient to warrant an investigative stop under *Terry*. Pursuant to such a stop the officer was free to take the appellant to the nearby scene of the burglary for possible identification, and such an identification would have given the police officer probable cause for arrest. And a *Terry* stop would have justified a patdown search for weapons.

*Id.* at 1054-55 (footnotes omitted).

The scenario described by the D.C. Circuit is substantially similar to what Officer Nagamatsu did. He saw Plaintiff, had a reasonable suspicion that Plaintiff might be connected with the theft, and stopped Plaintiff under *Terry*.[2] It was only after obtaining the eyewitness identification that Officer Nagamatsu believed he had the probable cause he needed for the arrest.

The facts known to Officer Nagamatsu when he placed Plaintiff in handcuffs were that Plaintiff matched the description of someone the coffee shop manager reported tried to take the tip jar and possibly might have taken some money out of the tip jar. These facts are not sufficient, by themselves, to establish probable cause to arrest Plaintiff for Theft III. They may have provided Officer Nagamatsu with a "strong reason to suspect" Plaintiff, but that is "not enough." *Harper*, 533 F.3d at 1022. First, merely matching a physical description reported over 911, without more, has not been held to be sufficient probable cause for arrest absent other corroborating evidence, and the Court declines to so hold under these facts. Second, at the time Officer Nagamatsu placed the handcuffs on Plaintiff, the officer did not even know if the crime of Theft III had been committed because he did not know whether any money had been taken out of the tip jar. The witness reported to 911 that she did not know whether money had been taken out of the tip jar or whether the thief "currently has any [money] on him." Defendants do not argue that Officer Nagamatsu arrested Plaintiff for attempted theft when he placed the handcuffs on Plaintiff and then later arrested Plaintiff for Theft III. Defendants' motion for summary judgment against Plaintiffs' federal claims are denied.

---

[2] The Court previously held that Officer Nagamatsu's initial stop of Plaintiff was lawful under *Terry*. The Court's denial of summary judgment rested on events occurring after the initial stop.

### 3. Plaintiff's State Law Claim for False Arrest and Imprisonment

The Court previously summarized Plaintiff's state law claims as including false arrest and imprisonment, negligence, and intentional infliction of emotional distress. *Smith*, 2020 WL 265204, at *1. In their first motion for summary judgment, Defendants also characterized Plaintiff's state law allegations as including those three claims. The Court granted summary judgment on Plaintiff's state law claims for negligence and intentional infliction of emotional distress, but was silent on Plaintiff's state law claim for false arrest and imprisonment. *Id.* at *4. The Court stated that Defendants' first motion for summary judgment was denied as to all other claims, thereby apparently leaving Plaintiffs' state law false arrest and imprisonment claim for trial, without specifically discussing that claim. *Id.* In Defendants' current motion for summary judgment, they argue that Plaintiffs' Amended Complaint does not assert a claim for false arrest and imprisonment under state law. The Court rejects this argument.

Because the Court's previous summary judgment ruling under the OTCA was ambiguous about Plaintiff's state law false arrest and imprisonment claim, the Court now specifically addresses that argument. The Court also addresses Defendants' current motion for summary judgment about probable cause when Plaintiff was handcuffed with respect to Plaintiff's state law claim.

### a. OTCA

Defendants previously argued that Plaintiff "immediately believed" his confinement and arrest was unlawful when it occurred and thus the claim was barred by the OTCA. The Court first notes that Plaintiff gave notice under the OTCA within 180 days from when the charges against him were dismissed. Plaintiff was confined, arrested, charged, arraigned, and released in May 2015. He was not prosecuted until 2017, and was convicted of misdemeanor Theft III in a jury trial on June 6, 2017. After Plaintiff appealed, which entitled him to a trial *de novo* in

PAGE 14 – OPINION AND ORDER

Circuit Court, the City moved to dismiss the charges on February 8, 2018, and the court entered

the dismissal on February 9, 2018. Plaintiff sent his tort claim notice on March 25, 2018.

Under Oregon law, "'false arrest' and 'false imprisonment' contain identical legal

elements." *Fossen v. Clackamas Cnty.*, 271 Or. App. 842, 848 (2015). These elements are:

"(1) defendant must confine plaintiff; (2) defendant must intend the act that causes the

confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be

unlawful." *Denucci v. Henningsen*, 248 Or. App. 59, 67 (2012) (quoting *Hiber v. Creditors Coll.*

*Serv.*, 154 Or. App. 408, 413 (1998)). A plaintiff must know, or reasonably should know, the

facts giving rise to a claim to trigger the OTCA 180-day deadline. *Id.* at 68. "The question of

what a plaintiff should have known, and when, is ordinarily a question for the jury." *Id.*

As for when Plaintiff knew he had a cognizable tort such that he should have sent his tort

claim notice, the Court is persuaded by the analysis of the Oregon Court of Appeals in *Denucci*.

> On the day of her arrest, plaintiff plainly knew that she had been
> arrested. However, that fact alone was not enough to commence
> the 180-day period. The facts must alert a plaintiff or a reasonable
> person that three elements exist: "an injury occurred, *the injury*
> *harmed one or more of the plaintiff's legally protected interests*,
> and the defendant is the responsible party." *Benson*, 196 Or. App.
> at 215, (emphasis added). That is, plaintiff had to know, or have
> had a duty to learn, facts that would make an objectively
> reasonable person aware of a substantial possibility that her arrest
> harmed a legally protected interest.
>
> If Henningsen had had probable cause to arrest plaintiff, the arrest
> would not have harmed any legally protected interest that she had.
> *See, e.g.*, *Picray v. Sealock*, 138 F.3d 767, 770 (9th Cir. 1998).
> Therefore, the 180-day period did not start until plaintiff knew, or
> in the exercise of reasonable care should have known, facts that
> would alert a reasonable person to a substantial possibility that her
> arrest was unlawful.
>
> Defendant offers, and we perceive, no reason to conclude that a
> reasonable person would have known that her arrest was unlawful
> on the day when it took place. Under these circumstances, we
> cannot say, as a matter of law, that plaintiff had a duty to

> investigate the legality of her arrest immediately after she was arrested; nor can we say, if she had such a duty, when an investigation would have yielded facts that would have alerted a reasonable person to a substantial possibility that the arrest was unlawful. Therefore, the question of when plaintiff knew or should have known facts indicating that her arrest was unlawful must be answered by a jury.

*Id.* at 69-70 (emphasis in original) (footnote omitted).

Plaintiff knew he was arrested on May 15, 2015, but although he may have believed his arrest was without probable cause, a court does "not impute to an arrestee knowledge that she [or he] was arrested without probable cause merely because she [or he] suffered the indignity of an arrest." *Id.* at 69 n.9. Plaintiff's subjective belief that he did nothing wrong and Officer Nagamatsu should not have placed Plaintiff in handcuffs is different from facts that would alert a reasonable person to a *substantial possibility* that his arrest was unlawful, particularly when Officer Nagamatsu states that he told Plaintiff that he matched the description of the suspect of a theft. Thus, the Court does not find as a matter of law that Plaintiff's claim is time-barred under the OTCA. This issue is for the jury.

### b. Probable Cause

In resolving Defendants' first motion for summary judgment, the Court found that Officer Nagamatsu had probable cause to arrest Plaintiff after the eyewitness identification. That finding, however, does not resolve Plaintiff's claim for the short time he was confined before the eyewitness identification. The same concerns with the reasonableness of the investigatory stop and search remain under Plaintiff's state law claim as with Plaintiff's federal law claim. *See, e.g.*, *State v. Rudder*, 347 Or. 14, 24-25 (2009) ("[In an investigatory stop,] opening and inspecting the contents of a suspect's pocket—is a different matter. It is a form of search that is more intrusive than a patdown and that normally only occurs incident to a lawful arrest, when police

PAGE 16 – OPINION AND ORDER

are authorized to search the arrestee's person and effects for evidence of the crime for which the arrest was made.").

Regarding whether Officer Nagamatsu had probable cause to arrest Plaintiff when he placed Plaintiff in handcuffs, under Oregon law both subjective and objective probable cause is required. *See, e.g.*, *State v. Vasquez-Villagomez*, 346 Or. 12, 24 (Or. 2009) ("Under Article I, section 9, of the Oregon Constitution, two components comprise probable cause: an officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances." (simplified)). Defendants do not assert that Officer Nagamatsu had a subjective belief that he had probable cause to arrest Plaintiff until after the eyewitness identification, when Officer Nagamatsu gave Plaintiff his *Miranda* warning and placed him in Officer Nagamatsu's vehicle. Indeed, in Officer Nagamatsu's earlier declarations, in describing the events, he described that he arrested Plaintiff after obtaining eyewitness identification and he described that chronology as explaining his probable cause determination. Thus, Defendants fail to meet their burden to show at summary judgment that probable cause existed under Oregon law at the time Officer Nagamatsu placed Plaintiff in handcuffs.

### 4. Qualified Immunity

Defendants briefly argue that Officer Nagamatsu is entitled to qualified immunity for making the purported arrest when he placed Plaintiff in handcuffs, even though Officer Nagamatsu did not subjectively believe that he had probable cause to arrest Plaintiff at that time and actually arrested Plaintiff later after conducting an investigation. Defendants' entire argument is that "[q]ualified immunity is warranted here because plaintiff's arrest (i.e. at the time of his handcuffing) followed the development of reasonable grounds to support probable cause for plaintiff's arrest and did not violate any clearly established constitutional law." ECF 85 at 9.

The Court rejects this argument because the purported arrest at the time Officer Nagamatsu placed handcuffs on Plaintiff did not follow the development of reasonable grounds to support probable cause—the Court finds that Officer Nagamatsu did not have probable cause to arrest Plaintiff at that time. Further, the purported arrest violated clearly established constitutional law.

The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Thus, to withstand Defendants' argument that Officer Nagamatsu has qualified immunity for Plaintiff's federal claims stemming from Plaintiff's arrest, Plaintiff must show that a reasonable officer would not have arrested Plaintiff for theft based on only the 911 call and the fact that Plaintiff matched the caller's physical description, without further corroborating evidence or conducting an investigation, including investigating whether the suspect had taken money and a theft had even occurred.

As explained above, the information from the 911 call and Officer Nagamatsu's confirmation that Plaintiff matched the witness caller's physical description is sufficient for an investigatory (or *Terry*) stop. In 2015 it was clearly established, however, that such information alone is not sufficient *to make an arrest*. As explained by the Ninth Circuit:

> We decline to adopt Appellees' argument that merely because citizen witnesses are presumptively reliable, the officers in this situation had no duty to examine further the basis of the witness' knowledge or talk with any other witnesses. We agree with the California Supreme Court that the general proposition that private citizen witnesses or crime victims are presumed reliable does not dispense with the requirement that the informant furnish underlying facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator.

*Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1444 (9th Cir. 1991) (simplified)[3]; *see also id.* ("[W]e agree with the Fullers that the police officers had a duty to conduct an investigation into the basis of the witness' report . . . ."). Moreover, at the time of Plaintiff's purported arrest, the Ninth Circuit had discussed the need for officers to investigate after a citizen report identifying a suspect. *See Merriman v. Walton*, 856 F.2d 1333, 1335 (9th Cir. 1988) (denying qualified immunity when officers failed to investigate after a citizen identification of a suspect).

At the time Officer Nagamatsu placed the handcuffs on Plaintiff, neither Officer Nagamatsu nor Officer Waine had examined the basis of any eyewitness's knowledge, including the 911 caller. That is why Officer Nagamatsu subjectively did not place Plaintiff under arrest until after Officer Waine had interviewed the eyewitnesses, obtained more information about the alleged crime, obtained eyewitness identification that Plaintiff was the alleged perpetrator, and obtained confirmation that money had been taken from the tip jar. Before that investigation, however, back when Plaintiff was first placed in handcuffs, there was no probable cause to arrest Plaintiff and no reasonable officer could have concluded that there was. *See, e.g.*, *Merriman*, 856 F.2d at 1335 ("A reasonable police officer would have made further inquiry before effecting a warrantless arrest.").

## B.  Motion to Amend

Plaintiff moves for leave to file a Second Amended Complaint, adding a claim alleging that Officer Nagamatsu violated Plaintiff's Fifth Amendment rights by interrogating him before giving a *Miranda* warning and including statements from that interrogation in his police report,

---

[3] The "situation" in *Fuller* was that officers had been told by one witness that the Appellants "had handled the missing ring before leaving the store and that no one else in the store had the ring" and by another witness that one Appellant "had run into the rest room and asked everyone to exit, and that she appeared to be attempting to make herself throw up— conduct consistent with an attempt to dispose of the ring." 950 F.2d at 1443.

which was introduced at Plaintiff's trial, as well as testifying on the stand at Plaintiff's trial about statements made by Plaintiff. Defendants object, arguing that the proposed amendment is unduly delayed and futile.

### 1. Futility

Defendants argue that the proposed amendment is futile because: (1) Plaintiff's statement was voluntary instead of coerced as required to state a Fifth Amendment claim; (2) Plaintiff made his incriminating statement after Officer Nagamatsu gave the *Miranda* warning; and (3) the claim is time-barred. The Ninth Circuit recently rejected Defendants' first argument. In *Tekoh v. County of Los Angeles*, the Ninth Circuit explained that a plaintiff "need only demonstrate that he was in custody when he was questioned by [law enforcement] without *Miranda* warnings" and that the district court erred by requiring the plaintiff "to prove that the confession or statement was improperly coerced and not voluntary." 985 F.3d 713, 725 (9th Cir. 2021) (simplified). It is undisputed that Plaintiff was in custody and was questioned by Officer Nagamatsu without *Miranda* warnings.

Defendants' second argument is that Plaintiff made his incriminating statement that he accidentally took the tip jar instead of his coffee after Officer Nagamatsu gave Plaintiff his *Miranda* warning. There are two problems with this argument. The first is that the statement about the tip jar is not the only statement used at Plaintiff's trial, and other statements, although not as incriminating, may have affected the jury's verdict. There are at least some statements that undisputedly were made before Plaintiff was *Mirandized*.

The second problem is that the sequence of events of Plaintiff's questioning is not clear. Officer Nagamatsu describes his pre-*Miranda* questioning in his police report, including that he explained to Plaintiff that he met the description of the alleged thief, that Plaintiff denied taking the money, that Plaintiff denied having knowledge of the crime, and that Plaintiff was

"uncooperative." Officer Nagamatsu states that he read Plaintiff his *Miranda* rights and then Officer Nagamatsu turned on the digital recorder.

The transcript of the recorded conversation between Plaintiff and Officer Nagamatsu does not reflect any statement that Plaintiff had been read his *Miranda* rights. The transcript of the recording opens with Officer Nagamatsu asking Plaintiff his name, which a reasonable jury could conclude would be a question that Officer Nagamatsu would have asked during his early questioning of Plaintiff, and not several minutes later in the encounter after Officer Nagamatsu had questioned Plaintiff, searched Plaintiff, confirmed the eyewitness identification, and given the *Miranda* warning. Indeed, in Officer Nagamatsu's police report, he states that Plaintiff would not tell him his name "at first" and Officer Nagamatsu could not locate Plaintiff's wallet or identification (presumably during the search, which occurred before the arrest), which appears to support that the officer asked Plaintiff's name at the beginning of his questioning, not later when they were in the car. Additionally, the transcript shows that this conversation includes Plaintiff's repeated denials, which Officer Nagamatsu describes in his police report as taking place before he gave Plaintiff his *Miranda* warning. Plaintiff also alleges in his Amended Complaint and his proposed Second Amended Complaint that the recorded interrogation took place before he was *Mirandized*. Thus, it is not clear whether the recorded conversation took place before or after Plaintiff was given his *Miranda* warning. Indeed, in summarizing the facts of the case in their pending motion for summary judgment, Defendants described the conversation between Plaintiff and Officer Nagamatsu on the recording as taking place before Plaintiff was given his *Miranda* warning. Defendants "corrected" that factual chronology in responding to Plaintiff's Interrogatories.

PAGE 21 – OPINION AND ORDER

The timing of the recorded conversation is important because the alleged statement that Plaintiff admitted to taking the tip jar purportedly took place right after Officer Nagamatsu turned off his digital recorder. Defendants argue that because the recorded conversation took place when the officer and Plaintiff were in the car and after Officer Nagamatsu *Mirandized* Plaintiff, then this incriminating statement was made by Plaintiff after he was given his *Miranda* warning. The record, however, is not clear about whether Plaintiff gave this statement before or after he was *Mirandized*. The Court does not conclude that there are no set facts Plaintiff could allege that would support that he made un-*Mirandized* incriminating statements that were used against him at trial.

Defendants' third argument is that the claim is time-barred. "It is well-established that claims brought under § 1983 borrow the forum state's statute of limitations for personal injury claims." *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007). In Oregon, the personal injury limitations period is two years. Or. Rev. Stat. § 12.110. "Oregon's discovery rule, however, also applies to claims asserted under § 1983." *Puff Factory, LLC v. Port of Cascade Locks*, 2020 WL 6547637, at *8 (D. Or. Nov. 6, 2020).

Defendants argue that Plaintiff had two years from the date Officer Nagamatsu used Plaintiff's incriminating statement at trial (June 2017) to allege Plaintiff's Fifth Amendment claim, and Plaintiff waited more than three years (January 2021) to move to amend. Plaintiff responds that until Defendants changed their litigation argument and claimed that Plaintiff was under arrest at the time Officer Nagamatsu placed Plaintiff in handcuffs, his pre-*Miranda* interrogation was not a cognizable claim under *Stoot*. Plaintiff also argues that his *pro se* pleading sufficiently put Defendants on notice of his Fifth Amendment claim because when Plaintiff was proceeding *pro se* he attached to his Amended Complaint and incorporated by

reference documents that described a Fifth Amendment violation and asserted that Officer

Nagamatsu unlawfully interrogated Plaintiff without giving him a *Miranda* warning.

Additionally, Plaintiff argues that counsel for Defendants informed counsel for Plaintiff that

Defendants did not have and could not obtain a transcript of Plaintiff's underlying criminal trial,

and without a transcript Plaintiff could not pursue a Fifth Amendment claim. Only after

significant effort by counsel's firm was counsel able to obtain a transcript in December 2020.

The Ninth Circuit did not decide *Tekoh* until January 15, 2021, the day Plaintiff moved to

amend to add his Fifth Amendment claim. Plaintiff relied on *Stoot* in his motion. *Stoot* held that

a plaintiff may assert a Fifth Amendment claim when unlawful police interrogation techniques

result in a statement that has been "used" in a criminal case "when it has been relied upon to file

formal charges against the declarant, to determine judicially that the prosecution may proceed,

and to determine pretrial custody status." *Stoot v. City of Everett*, 582 F.3d 910, 925 (9th

Cir. 2009).

In *Tekoh*, the Ninth Circuit addressed, as an issue of first impression, "whether the use of

an un-*Mirandized* statement against a defendant in a criminal case is *alone* sufficient to support

a 42 U.S.C. § 1983 action based on the Fifth Amendment violation." 985 F.3d at 714 (emphasis

added). The Ninth Circuit rejected the district court's approach of requiring "that the

interrogation that procured the statement was unconstitutionally coercive under the totality of the

circumstances, with the *Miranda* violation only one factor to be considered." *Id.* at 714-15. The

Ninth Circuit "conclude[d] that where the un-*Mirandized* statement has been used against the

defendant in the prosecution's case in chief in a prior criminal proceeding, the defendant has

been deprived of his Fifth Amendment right against self-incrimination, and he may assert a claim

against the state official who deprived him of that right under § 1983." *Id.* at 715. The Ninth

Circuit also concluded that when a police officer obtains the statement and includes it in a police report, that officer "causes" the statement to be used against the defendant, even though the officer is not the prosecutor. *Id.* at 724. Thus, even if the officer does not testify about statements, but the prosecutor simply introduces the officer's police report into evidence, the officer may be held liable for the Fifth Amendment violation. *Id.* at 724-25; *see also id.* at 724 ("We do not hold that taking an un-*Mirandized* statement always gives rise to a § 1983 action. We hold only that where government officials introduce an un-*Mirandized* statement to prove a criminal charge at a criminal trial against a defendant, a § 1983 claim may lie against the officer who took the statement.").

It does not matter whether Plaintiff was arrested or was simply in custody when he was questioned without being *Mirandized*. Both are potential violations. Thus, Defendants' change in theory of when Plaintiff was formally arrested did not create Plaintiff's Fifth Amendment claim. Defendants' continuing changing factual assertions about when certain conversations between Plaintiff and Officer Nagamatsu took place, however, are relevant considerations when considering the discovery rule.

Considering all the unique circumstances here, there are several reasons this claim is not futile as time-barred: (1) Plaintiff's earlier *pro se* pleading that incorporated documents that discussed the Fifth Amendment and *Miranda* violation, and therefore under the liberal *pro se* pleading standard arguably allows this claim to relate-back, even though the Court interpreted that pleading as not including a Fifth Amendment claim; (2) the requirement that the statement must have been "used" at trial and Defendants' contention that no trial transcript was available until appointed counsel obtained a transcript in December 2020, thereby putting Plaintiff on notice of the elements of his claim under the discovery rule at that time, particularly considering

the difficulty a *pro se*, incarcerated plaintiff would have in obtaining that transcript earlier when a municipality declared it was unable to obtain it; (3) Defendants' changing and internally inconsistent assertions about the chronology of facts in this case, which again raises the discovery rule; and (4) *Tekoh's* recent decision holding as a matter of first impression that the use of a defendant's un-*Mirandized* statement alone in the prosecutor's case-in-chief may give rise to a § 1983 claim against the officer who took the statement. The Court, therefore, finds that there may be some set of facts that can be proved under the proposed amendment that would constitute a timely and valid Fifth Amendment claim. *Barahona*, 881 F.3d at 1134.

### 2. Undue Delay

Defendants argue that Plaintiff should have brought this claim in his earlier complaints in this case. For the reasons the Court found that this claim is not time-barred, it is not unreasonably delayed.

### 3. Prejudice

Defendants do not argue prejudice as a reason the Court should deny Plaintiff's motion to amend. In the conclusion of their opposition to the motion, however, Defendants state in a conclusory manner that granting Plaintiff's motion would cause them prejudice. Defendants contend that having to defend a formerly unknown claim would be prejudicial. That is not sufficient prejudice to deny a motion to amend—otherwise all motions to amend would be subject to this form of prejudice. The Court notes, however, that while this motion was being briefed, discovery closed in this case. The Court previously had granted Defendants leave to depose Plaintiff. Defendants elected not to do so. Counsel for Defendants apparently communicated to Plaintiff's counsel that Defendants' counsel did not believe that additional discovery would be required if the Court allowed Plaintiff to add this claim. Nevertheless, if

Defendants believe that additional reasonable discovery, including taking Plaintiff's deposition, is required, Defendants may move to reopen discovery.

### 4. Dismissed Claims

The Court notes that the proposed Second Amended Complaint contains claims against which the Court granted summary judgment. Plaintiff clarifies that he includes these claims only for appellate purposes and acknowledges that he will pursue in this litigation only the claims the Court has allowed to continue. Those claims are Plaintiff's state law claim for false arrest and imprisonment, federal claim under the Fourth and Fourteenth Amendments, and federal claim under the Fifth Amendment.

## CONCLUSION

The Court DENIES Defendants' Motion for Summary Judgment (ECF 85). The Court finds as a matter of law that Officer Nagamatsu did not have probable cause to arrest Plaintiff at the time Officer Nagamatsu first placed Plaintiff in handcuffs. The Court GRANTS Plaintiff's Motion for Leave to File Second Amended Complaint (ECF 95), although Plaintiff may change his *Stoot* references to *Tekoh*. Plaintiff may file his Second Amended Complaint within 14 days of this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 17th day of March, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge