# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RONNIE SMITH**, | Case No. 6:16-cv-1771-SI |
| Plaintiff, | **OPINION AND ORDER DENYING DEFENDANTS' MOTION CHALLENGING PLAINTIFF'S EXPERT WITNESS TESTIMONY** |
| v. | |
| **CITY OF THE DALLES**, a Municipal corporation, and **KOJI NAGAMATSU**, in his individual and official capacities, | |
| Defendants. | |

**Michael H. Simon, District Judge.**

Plaintiff Ronnie Smith has designated as Plaintiff's expert witness Ms. Jonicia June Shelton, MA, CSWA, QMHP. Plaintiff states:

> Ms. Shelton will offer her opinion that plaintiff experienced the events of May 28, 2015 as a trauma, which was exacerbated in the June 2017 trial, causing Mr. Smith mental distress throughout and since. She will opine on the nature of the harm, and on possible actions that could be taken to redress that harm, at least in part.
>
> \* \* \*
>
> Ms. Shelton's opinions focus on how the May 2015 incident and its aftermath (including the trial) affected Plaintiff Smith, as he was in May 2015, June 2017, and today. Her opinions take the plaintiff as we find him, then and now. (Consistent with this approach, plaintiff is seeking an "eggshell plaintiff" jury instruction.)

ECF 114 at 3-4. Defendants are the City of The Dalles (City) and Officer Koji Nagamatsu, a police officer employed by the City. As the Court understands Plaintiff's position, Ms. Shelton will testify that Plaintiff was more vulnerable to suffering psychological and emotional injury

from his encounter with Officer Nagamatsu that is at issue in this lawsuit as a result of Plaintiff's earlier life experiences. Defendants have moved *in limine* to exclude the testimony of Ms. Shelton. ECF 110. For the reasons that follow, the Court denies Defendants' motion to exclude Ms. Shelton from testifying, although the precise dimensions and scope of Ms. Shelton's trial testimony will need to be further addressed at the pretrial conference.

## BACKGROUND

Plaintiff states in his Trial Brief (ECF 121) that the following claims remain for trial: (a) four claims under 42 U.S.C. § 1983 brought only against Officer Nagamatsu,[1] alleging violations of Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments;[2] and (b) one state law claim brought against both Officer Nagamatsu and the City, alleging false arrest and illegal search in violation of Oregon common law. The Court previously determined that the period at issue for the false arrest and search and seizure claims (both federal and state) is the investigatory stop, when Officer Nagamatsu placed Plaintiff in handcuffs, performed a pat-down search, and reached into Plaintiff's pocket and withdrew several crumpled bills of money.[3] Soon thereafter, eyewitnesses identified Plaintiff, and Officer Nagamatsu then

---

[1] The Court previously granted summary judgment in favor of the City on Plaintiff's municipal liability claim under § 1983. ECF 70 at 7.

[2] In his Trial Brief, Plaintiff asserts that the four claims under § 1983 to be tried are: (a) false arrest in violation of the Fourth Amendment; (b) unlawful search and seizure in violation of the Fourth Amendment; (c) unlawful use of Plaintiff's statements made before Plaintiff was advised of his *Miranda* rights in violation of the Fifth Amendment; and (d) violation of Plaintiff's due process rights under the Fourteenth Amendment relating to a "lost video." The Court plans to discuss Plaintiff's "lost video" claim at the upcoming pretrial conference.

[3] The Court denied in part Defendants' motion for summary judgment, finding an issue of fact regarding whether the Officer Nagamatsu's initial stop and handcuffing of Plaintiff was proper under *Terry v. Ohio*, 392 U.S. 1 (1968).

placed Plaintiff under arrest. The Court previously held that Officer Nagamatsu had probable cause to arrest Plaintiff after—but only after—these eyewitness identifications. ECF 70 at 4.

Plaintiff also asserts that he was questioned by Officer Nagamatsu while in custody but before Plaintiff received his *Miranda* warnings. It is undisputed that Officer Nagamatsu questioned Plaintiff while he was in handcuffs and before giving Plaintiff his *Miranda* warnings. The parties dispute the degree of questioning and what specific statements Plaintiff made before he received his *Miranda* warnings. Plaintiff alleges that statements he made before being given his *Miranda* rights were later used against him at trial in violation of the Fifth Amendment. This serves as the basis for one of Plaintiff's claims under § 1983. *See Tekoh v. County of Los Angeles*, 985 F.3d 713 (9th Cir. 2021).

## STANDARDS

The United States Court of Appeals for the Ninth Circuit has discussed the standard under which a district court should consider the admissibility of expert testimony. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036 (9th Cir. 2014). As explained by the Ninth Circuit:

> Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Fed. R. Evid. 702.
>
> Under *Daubert* and its progeny, including *Daubert II* [*Daubert v. Merrell Dow Pharms, Inc.*, 43 F.3d 1311 (9th Cir. 1995)], a district court's inquiry into admissibility is a flexible one. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted).

> "[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969-70.
>
> The test of reliability is flexible. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc). The court must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance. *Id.; see also Primiano*, 598 F.3d at 564. But these factors are "meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Primiano*, 598 F.3d at 564 (citations and quotation marks omitted); *see also Barabin*, 740 F.3d at 463. The test "is not the correctness of the expert's conclusions but the soundness of his methodology," and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony. *Primiano*, 598 F.3d at 564-65. Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge. A district court should not make credibility determinations that are reserved for the jury.

*Id.* at 1043-44 (case citation alterations added, remaining alterations in original).

"It is the proponent of the expert who has the burden of proving admissibility." *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Admissibility of the expert's proposed testimony must be established by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10 (*citing Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)). The party

presenting the expert must show that the expert's findings are based on sound principles and that they are capable of independent validation. *Daubert II*, 43 F.3d at 1316.

## DISCUSSION

Defendants raise several arguments to exclude Ms. Shelton's testimony. Defendants argue: (1) Ms. Shelton is not sufficiently qualified to serve as an expert; (2) her opinion relates to racial discrimination and thus is irrelevant in this case; (3) her opinion is not based on adequate information; (4) Plaintiff can sufficiently explain his injuries to the jury; (5) Ms. Shelton's opinion does not rule out alternative causes of Plaintiff's conditions; and (6) her opinion relies on race-based traumatic theory, which is unreliable and inapplicable in this case. The Court addresses each argument in turn.

### A. Qualifications

Defendants' primary argument against Ms. Shelton's qualifications is that although she is qualified to opine about racial discrimination, she is not qualified to opine about any matters that are relevant to this case. The Court disagrees and finds that Ms. Shelton is qualified to testify as an expert about the experiences and trauma suffered by Plaintiff and to explain how those experiences purportedly made him more vulnerable to suffering greater injury from his encounter with Officer Nagamatsu at issue—essentially, how Plaintiff's life experiences have made him an "eggshell" Plaintiff.

Rule 702 endorses experts who qualify based on "knowledge, skill, experience, training or education." Ms. Shelton holds a master's degree in Social Work, has worked extensively in positions involving the diagnosis and treatment of mental trauma, and has a "Client Focus" that includes people of African American background. She is a Clinical Social Work Associate (CSWA) and a Qualified Mental Health Professional (QMHP) under Oregon law. Thus, she is qualified as an expert witness, both through her education and her work experience.

Defendants also argue that Ms. Shelton is not qualified because she erroneously believed that this case was about Plaintiff's experiences with all police officers and not just his encounter with Officer Nagamatsu. The Court does not read her expert report as stating that this case is about Plaintiff's entire history of police interactions, but only that his history of trauma makes him more vulnerable to having a certain reaction from the interaction at issue with Officer Nagamatsu. If Defendants believe that Ms. Shelton's deposition testimony erroneously suggested the former, that goes to the weight and not the admissibility of Ms. Shelton's opinions.

**B.  Relevancy**

Defendants argue that Ms. Shelton's opinion is not relevant because she discusses Plaintiff's purported previous experiences with racial discrimination by law enforcement and his experiences with "local" citizens in the City shortly before his encounter with Officer Nagamatsu. Defendants contend that those experiences are irrelevant to this trial, which is about Officer Nagamatsu's conduct, and is unfairly prejudicial to Defendants because they are not liable for the conduct of other people and this case is not about racial discrimination. Ms. Shelton's expert opinion, however, is that those other experiences contributed to Plaintiff's vulnerability to suffering greater harm from the encounter with Officer Nagamatsu that is at issue. This is analogous to evidence of preexisting trauma that makes a plaintiff who was injured in a low-impact car accident more susceptible to injury from the car accident than would be an otherwise healthy person. The preexisting trauma is not introduced so that the car accident defendant could be held liable for the earlier traumas but only to help explain why a seemingly innocuous or low-impact accident could have caused actual injury to a particular plaintiff. Similarly, Ms. Shelton's testimony is relevant to help explain why a brief, negative encounter with law enforcement might trigger a greater response in some people who have had certain

previous experiences. Further, any unfair prejudice can be mitigated with appropriate jury instructions.

Defendants also argue that the Court should exclude Ms. Shelton's opinion because she notes a discussion that Defendants characterize as occurring after probable cause to arrest had been established. The Court, however, found a disputed issue about whether this conversation occurred before or after probable cause was established. The Court also finds that even if this conversation occurred after probable cause was established, Ms. Shelton's highlighting of this discussion would go to the weight, and not the admissibility, of her opinions.

## C. Bases

Defendants argue that Ms. Shelton's opinions are unreliable and unhelpful because they are based on a single 30-to-45-minute telephone interview with Plaintiff, Ms. Shelton did not perform any "objective" testing, she relied on Plaintiff's subjective reporting, and Ms. Shelton did not perform any public records search or obtain other information about Plaintiff, such as his incarceration history. Ms. Shelton testified at deposition that it "usually" takes more than a single interview to provide enough information for a diagnosis, but that leaves open the possibility that Plaintiff's situation fell outside the norm. Indeed, Ms. Shelton submitted a declaration clarifying that although not usual, it does happen that she can make a diagnosis with one interview, and that she did so here with Plaintiff, subject to the diagnosis changing after the initial interview. Further, she has since had an additional interview with Plaintiff, and performed testing, that she states confirms her original diagnosis. This and Defendants' other similar challenges go the weight of Ms. Shelton's opinion.

## D. Plaintiff's Ability to Articulate His Injury

Defendants argue that Plaintiff can describe what happened with his encounter with Officer Nagamatsu and how it made Plaintiff feel, as Ms. Shelton explains in her expert report.

Thus, conclude Defendants, the jury does not need an expert witness on these issues, and one would not be helpful in this case. Ms. Shelton, however, is not simply describing what happened between Plaintiff and Officer Nagamatsu and how that made Plaintiff feel. She is an expert on how Plaintiff's previous experiences and trauma made him more susceptible to psychological or emotional injury from his encounter with Officer Nagamatsu. Plaintiff is not an expert in that field, and he cannot describe how and why he is more susceptible to injury based on his previous encounters with law enforcement.

### E. Differentiating Alternative Causes

Defendants argue that Ms. Shelton fails to distinguish how the traumas that Plaintiff has previously suffered during his life, including some that she highlights (racial discrimination and childhood trauma) and some that she omitted (trauma while incarcerated) caused his current symptoms versus the trauma allegedly caused by Plaintiff's encounter with Officer Nagamatsu. This challenge goes the weight of Ms. Shelton's opinion, not its admissibility.

### F. Race-Based Traumatic Stress

Part of Ms. Shelton's opinion relies on what is referred to as "Race-Based Traumatic Stress," a theory first propounded by Robert T. Carter, Ph.D. Professor Carter is Professor Emeritus of Psychology and Education at Columbia University Teachers College.[4] Defendants argue that this theory is inherently unreliable, that the only legal scholarship that discusses it was written by its creator, Professor Carter, and that it does not apply in this case because the claims here do not involve racial discrimination.

As discussed above, the theory (and Ms. Shelton's mention of "post-traumatic slave syndrome") are relevant not to the specific claims at issue but to Plaintiff's allegedly heightened

---

[4] *See* https://www.tc.columbia.edu/faculty/rtc10/ (last visited May 13, 2021).

vulnerability to psychological injury. As for Defendants' other arguments, the Court has reviewed the literature and finds the theory sufficiently scientific and vetted to meet the standards of Rule 702 of the Federal Rules of Civil Procedure. Further, the concept of race-based discrimination as trauma is not limited to Professor Carter but instead is widely discussed in professional literature. *See, e.g.*, Noa Ben-Asher, *Trauma-Centered Social Justice*, 95 Tul. L. Rev. 95, 113 and nn. 86-91 (2020) ("In the past several decades, mental health experts have underscored the traumatic impacts of racism in the United States. Several studies have examined childhood trauma caused by factors such as racism and poverty. Psychologists have developed models to address trauma caused by racist experiences and micro-aggressions. Scholars have introduced the concept of historical mass-trauma, which may affect the emotional and physical health of large populations. The clinical diagnosis of PTSD has been identified as a consequence of racism. The term 'post traumatic slave syndrome' (PTSS) has been coined to mark the experience of African Americans in relation to historical trauma. Accounts of the racial trauma caused by the criminal justice system have proliferated." (footnotes omitted) (gathering citations)).

## CONCLUSION

The Court DENIES Defendants' Motion *in Limine* Against Plaintiff's Proposed Expert, Ms. Jonicia June Shelton (ECF 110), although the precise dimensions and scope of Ms. Shelton's trial testimony will need to be further addressed at the pretrial conference.

**IT IS SO ORDERED**.

DATED this 13th day of May, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge